UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD W. VAN DYN HOVEN,

      Appellant,

v.                                                                         Case No. 12-C-0076

BANK OF KAUKAUNA,

      Appellee.

## DECISION AND ORDER

This bankruptcy appeal raises the issue of whether that portion of the debt incurred by a business over a seven-month period when its bank covered overdrafts for payment of payroll taxes is excepted from the discharge of the owner of the business pursuant to 11 U.S.C. § 523(a)(14) and (14A). The bankruptcy court held that it was and granted summary judgment in favor of the creditor bank. For the reasons that follow, the Court disagrees and reverses the judgment of the bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard W. Van Dyn Hoven (Van Dyn Hoven) filed a petition for Chapter 7 bankruptcy on May 18, 2010. One of his creditors, the Bank of Kaukana ("the Bank"), objected to discharge of a portion of the debt owed by Van Dyn Hoven under a personal guarantee and instituted an adversary proceeding. The parties stipulated to the following facts: Van Dyn Hoven was the sole shareholder and in charge of the day-to-day operations of Action Electric, Electrical Contractors,

Inc. (Action Electric). Action Electric was a Wisconsin corporation engaged in business as an electrical contractor. Action Electric had a business checking account and loans at the Bank since 2001, and Van Dyn Hoven guaranteed payment of Action Electric's obligations to the bank, pursuant to written continuing guarantee agreements. The Bank regularly covered Action Electric's checks and ACH drafts[1] against its checking account, with Van Dyn Hoven's knowledge and consent. Between late 2006 and late 2007, Action's loan classification slipped from "Satisfactory" to "Watch," and by October 2008, it had further slipped to "Substandard."

By October 2008, Action Electric's checking account was overdrawn by approximately $254,000, and the overdrafts were rolled into one or more notes. Although Action Electric's checking account had a positive balance at the end of September 2009, the account showed a negative balance beginning in October 2009 and never regained a positive balance thereafter. Nevertheless, the Bank continued honoring some checks and ACH drafts (statements show many were dishonored) in the overdrawn account. Van Dyn Hoven again was aware of the status of the account and did not object to the Bank covering the checks.

Between October 7, 2009, and April 30, 2010, the Bank honored 45 ACH drafts directing a total of $101,432.91 in payment to the IRS or the Wisconsin Department of Revenue. A list of the payroll taxes paid through the account which the Bank contends are excepted from discharge is included in the stipulated facts. (ECF No. 2 at 16.) During the same period, Action Electric continued to operate and to generate revenue and accounts receivable. Deposits to the account over

---

[1]Automated Clearing House (also referred to as ACH) is the network that processes electronic financial transactions in the United States. ACH credit transactions include payments to vendors or merchants made electronically or electronic check conversions where the merchant scans a check and converts it to an ACH item.

the same period of time totaled $460,858.91. Employee wages and other operating expenses were also paid out of the account. By the time he filed for bankruptcy, Van Dyn Hoven owed the Bank $885,000, $121,239.50 of which was attributed to overdrafts the Bank covered.

Based on these facts, the parties filed cross motions for summary judgment. In a memorandum decision issued on November 3, 2011, the bankruptcy court concluded that the $101,239.50 used to pay Action's payroll taxes was not dischargeable and granted summary judgment in favor of the Bank. It is from that decision that Van Dyn Hoven appeals.

## LEGAL STANDARD

Federal district courts have jurisdiction to hear appeals of bankruptcy court orders under 28 U.S.C. § 158(a). A bankruptcy judge's "[f]actual findings are reviewed for clear error; [and] legal conclusions are reviewed de novo." *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007); accord *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). However, this is an appeal from a bankruptcy court's decision granting summary judgment. Granting a motion for summary judgment is a legal conclusion, meaning that it is reviewed de novo. *Monarch Air Service, Inc. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir.2004). A district court will affirm a grant of summary judgment if there are no genuine issues as to any material facts and if the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). A district court can also affirm a summary judgment "on any ground supported by the record, even if it was not relied upon by the court below." *Id.* (citing *Johnson v. Gudmundsson*, 35 F.3d 1104, 1115 (7th Cir. 1994)).

**ANALYSIS**

Section 523(a)(14) and (14A) except from discharge of a debtor any debt incurred to pay a tax to the United States or other governmental entity that would itself be nondischargeable to the debtor. Congress enacted 11 U.S.C. § 523(a)(14) in 1994 to bar the dischargeability in bankruptcy of ordinary loans "incurred to pay a tax to the United States that would be nondischargeable pursuant to [§ 523(a)(1) ]." *In re Francis*, 226 B.R. 385, 396 (6th Cir. BAP 1998) (Lundin, J., dissenting); *see also In re Barton*, 321 B.R. 869, 875 (Bankr. N.D. Ohio 2004) ("This section was added to the Bankruptcy Code through the Bankruptcy Reform Act of 1994, and was intended 'to impose a limitation on pre-bankruptcy substitution of a dischargeable obligation for a nondischargeable obligation.'") (quoting *American Express Centurion Bank v. Gavin (In re Gavin)*, 248 B.R. 464, 465 (Bankr. M.D. Fla. 2000)). Once the IRS and other taxing authorities began accepting credit card payments for taxes, it became a simple matter to substitute a dischargeable debt (the charge on a credit card) for a nondischargeable claim (the pre-petition taxes). *See* The Bankruptcy Amendments Act of 1993: Hearings on S. 540 Before the Subcomm. on Courts and Admin. Prac. of the Comm. on the Judiciary, 103d Cong. 265 (statement of the American Bankers Ass'n), 370–71 (statement of Mastercard Int'l Inc. and Visa U.S.A. Inc.) (March 31, 1993). Subsection (14) of section 523(a) was added at least in part to address this problem. Subsection (14A) was added in 2005 to extend the exception to include debt incurred to include taxes paid to other taxing authorities as well. Pub. L. 109-8, § 314(a). In this case, the Bank argued and the Bankruptcy Court found that both exceptions applied to $101,239.50 of the debt Van Dyn Hoven owed the Bank under his guarantee.

4

Van Dyn Hoven argues that the Bankruptcy Court erred in denying his discharge for the portion of his debt used to pay overdrafts for payroll taxes. Unlike the vast majority of cases in which the exception has been applied, Van Dyn Hoven notes that the tax liability here at issue was not paid with a personal credit card. More importantly, the tax liability paid by the Bank was that of Action Electric, not Van Dyn Hoven, and because the taxes were timely paid, he could never have been held liable for them. Given these facts, Van Dyn Hoven argues that the exceptions to discharge do not apply.

Van Dyn Hoven's argument rests largely on *In re White*, 455 B.R. 141 (Bankr. N.D Ind. 2011). In *White*, the debtor operated a business under the corporate name of New Era of Educational Development, Inc. ("New Era"). DDC, the plaintiff creditor, paid New Era's payroll taxes to the IRS and the Illinois Department of Revenue under an Account Services Agreement. When White later filed for Chapter 7, DDC claimed that the amount DDC paid for New Era's payroll taxes was excepted from discharge pursuant to 11 U.S.C. § 523(a)(14) and (14A). Based on its analysis of the provisions of the tax code governing the liability of individuals involved in a corporation for nonpayment of payroll taxes, the Bankruptcy Court rejected the plaintiff's claims and held that the debt would be discharged. In essence, the Bankruptcy Court noted that because the payroll taxes were timely paid, the debtor cannot be said to have incurred debt to pay her tax liability. Even if the taxes had not been timely paid, the court noted that it did not necessarily follow that the debtor would have been personally liable for them. To impose personal liability on the debtor for nonpayment of payroll taxes by the corporate employer, the IRS would have to show not only that the payroll taxes were unpaid, but also that the debtor was a "responsible person" and that she willfully failed to pay the taxes. 455 B.R. at 147. This led the bankruptcy court to observe

that there was "many a drip between the cup and the lip before liability could be asserted against an individual under 26 U.S.C. § 6672." *Id.* (internal quotes omitted). In other words, the mere fact that the payroll taxes were not paid did not mean that the business owner was personally liable. Moreover, even if a responsible person is found liable, the liability is not for the unpaid taxes, the court observed, but instead is in the form of a 100 % penalty intended as a kind of collection device. *Id.* Thus, the most that could be said, according to the court, was that the debtor may have been contingently liable individually for New Era's payroll taxes had they not been paid. Given these facts, the court concluded that DDC's payments did not constitute a debt incurred to pay a federal or state tax with respect to the debtor. The plaintiff's request to except its payments from the debtor's discharge was therefore denied.

The bankruptcy court in this case found *White* "unpersuasive and contrary to the purpose of the exceptions to discharge under 11 U.S.C. § 523(a)(14) and (14A)." (Mem. Dec. on Mot. for S.J., at 12.) Allowing a responsible person to avoid the exception by arranging for the business entity to borrow the money to timely pay taxes, the court suggested, would circumvent the intent of the exceptions by allowing the individuals responsible for payment to substitute dischargeable debt for nondischargeable debt. Such a result is also inconsistent with the language of the code, the court concluded. The court noted that the term debt in section 523(a) included contingent claims, and that Van Dyn Hoven, as a responsible person, was at all times at least contingently liable for Action Electric's payroll taxes. *See* 11 U.S.C. § 101(5)(12). Likewise, the court noted, the contingent guarantee of the Action Electric debt to the Bank made Van Dyn Hoven liable to the Bank for a nondischargeable debt to the extent of taxes paid on his behalf.

6

Instead of *White*, the bankruptcy court followed *In re Cook*, 416 B.R. 284 (Bankr. W.D. Va. 2009). In that case, the debtor used his American Express Card to pay certain payroll taxes and penalties owed by his LLC. In response to American Express' objection to his discharge of the portion of his debt used to pay the payroll taxes, the debtor argued that the debt incurred in payment for taxes did not fall within the exception set forth in section 523(a)(14) because the taxes paid were a liability of his business and not his personal liability. The *Cook* court rejected this argument noting that section 523(a)(14) excepts from discharge debt incurred for payment of taxes if the tax would be nondischargeable under section 523(a)(1). One category of nondischargeable taxes under section 523(a)(1), *Cook* noted, is specified in section 507(a)(8) of the Code, regardless of whether a claim for the tax was filed or allowed. 11 U.S.C. § 527(a)(1)(A). Section 507(a)(8) includes taxes which are "required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C). Since the debtor, as a responsible official, would have been liable for nonpayment of payroll taxes in the form of a 100% penalty, the court concluded that the exception from discharge set forth in section 523(a)(14) applied. "There is nothing in the Bankruptcy Code," the court held, "which requires that the IRS must have made an assessment against the responsible official before the exception to the dischargeability is triggered." *Id.*, at 289.

I agree with *Cook* that the IRS need not make an assessment against the responsible official before the section 523(a)(14) exception to discharge of debt used to pay a business' payroll taxes is triggered. But more is required than was shown here. There must be a showing of a willful refusal to pay the withheld taxes on the part of the debtor. Otherwise, the debtor cannot be held personally liable in any capacity for the unpaid payroll taxes. In *Cook*, the debtor had acknowledged his responsibility for withholding and payment of taxes. *Id.*, at 288. The liability he paid with his

7

American Express Card was reflected in four tax payment notices that had been sent jointly to him and his LLC. *Id.*, at 286. Here, by contrast, Action Electric's payroll taxes, like all of its expenses, were paid in the normal course of business. Had the Bank refused to extend credit by honoring the overdrafts, Van Dyn Hoven presumably would have ceased doing business at that point and used whatever income the business had to pay its taxes. Instead, with the Bank continuing to honor his overdrafts, he had no reason to suspect that he could be held personally liable for unpaid taxes. Indeed, while the parties stipulated to the fact that "Van Dyn Hoven was aware of the status of the account and did not object to the Bank's covering Action Electric's checks" (Stipulation of Facts, ¶ 10), there is no evidence that Van Dyn Hoven knew that his payroll taxes were being paid with borrowed funds as opposed to the company earnings that were regularly deposited into the account. It was only after he filed for Chapter 7 that the Bank claimed he had incurred debt to pay undischargeable tax liability.

For the same reason, there is also no evidence that Van Dyn Hoven incurred the debt for the purpose of paying taxes. To prevail on a claim under section 523(a)(14) or (14A), the creditor must show that: (1) the debt was incurred to pay a tax to the United States; and (2) the tax owed to the United States would have been nondischargeable under section 523(a)(1) if it had not been paid pre-petition. *In re Dinan*, 425 B.R. 583, 586 (Bankr. D. Nev. 2010); *In re Barton*, 321 B.R. 877, 879 (Bankr. N.D. Ohio 2005). Statutory exceptions to discharge are strictly construed against the party seeking the exception. *In re Berman,* 629 F.3d 761, 765 (7th Cir. 2011) ("Courts construe these exceptions narrowly, in favor of the debtor, bearing in mind the goal of bankruptcy law to give the debtor a fresh start."). The petitioning party has the burden of proving the right to the exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991); *Ojeda v. Goldberg*, 599

8

F.3d 712, 716 (7th Cir. 2010) ("A bankruptcy court applies a preponderance of the evidence standard when making dischargeability determinations under § 523(a).").

The phrase "incurred to pay a tax" as used in section 523(a)(14) and (14A) means that the debt was incurred "for the purpose of paying Federal or state taxes." *In re Stephenson*, Bankruptcy No. 07-10778-SSM, 2007 WL 4268904, *2 (Bankr. E.D. Va. Nov. 30, 2007) (unpublished decision). Otherwise, the exceptions would become open invitations to trace the use of all funds loaned to a business, regardless of when, with a hope of tying them to payment of some sort of tax liability. Here, for example, Action Electric paid its taxes in the ordinary course of business. The taxes were paid from the same account as payroll and other operating expenses. There is no showing that Van Dyn Hoven or any other employee of Action Electric ever applied for a loan to pay the company's tax liabilities. The fact that the Bank continued to honor overdrafts had the effect of extending a line of credit to Action Electric which Action used to remain in business. In fact, previous overdrafts were rolled into a series of notes to the Bank. (Stipulated Facts, ¶¶ 7,8.) Under the Bank's interpretation of the exceptions, any portion of the previous debt rolled into the notes that it could trace to tax payments would also be excepted from discharge. This is far beyond what the exceptions to discharge in section 523(a)(14) and (14A) were intended to accomplish.

It is also unfair to the debtor. Section 523(a)(14) and (14A) were added in order to prevent individuals who failed to pay their taxes from obtaining a discharge from liability for such debt by using unwitting creditors to substitute ordinary debt for nondischargeable tax liability. The Bank has offered no evidence that Van Dyn Hoven did that here. Not only is there no evidence that Van Dyn Hoven incurred debt for the purpose of paying taxes, but there is also no evidence that the Bank acted unwittingly in continuing to extend credit. Instead, the evidence suggests that the Bank was

9

fully aware of Action Electric's financial circumstances. The Bank monitored Action Electric's checking account, apparently even deciding which overdrafts it would pay and which it would not. This is a far cry from *Cook* where the responsible person used a presumably personal credit card to pay the withholding taxes for his business three months before he and his wife file for a Chapter 7 bankruptcy.

The other cases cited by the Bankruptcy Court are similarly distinguishable. *In re Francis* involved the issue of a novation upon two individuals and does not apply except to point out that if the consideration fails, the release is voided. 226 B.R. 385, 396 (B.A.P. 6th Cir. 1998). *In re Gavin* involved a debtor with direct liability who borrowed money from American Express on an access check to pay his income taxes. 248 B.R. 464, 465 (Bankr. M.D. Fla. 2000). The debt in all of these cases was not contingent but rather was direct and instant. Additionally, the debtors in all of these cases borrowed money in their own names, whereas here Action Electric was named on the account. *In Re Dinan*, also relied upon by the Bankruptcy Court, is another example of a debtor directly owing taxes and borrowing money to pay for them. 425 B.R. 584 (Bankr. D. NV 2010).

In all of these cases, the debtor was aware of the direct tax liability to the taxing authority which was immediately due and owing, and the debtor intentionally borrowed money in his own name for the purpose of paying taxes that were otherwise nondischargeable. Not so here, where the Bank extended credit to Action Electric — not Van Dyn Hoven himself — for a variety of legitimate business purposes, including but not limited to the payroll taxes.

For all of these reasons, I conclude the Bankruptcy Court erred in granting summary judgment in favor of the Bank excepting from Van Dyn Hoven's discharge the sum of $101,432.98.

The decision of the Bankruptcy Court is accordingly reversed, and the case remanded for further proceedings consistent with this decision.

**SO ORDERED** this   10th   day of May, 2012.

            s/ William C. Griesbach
           William C. Griesbach
           United States District Judge